UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 25 CR 436 |
| v. | ) | |
| | ) | Honorable Jeremy C. Daniels |
| DENIS JOINER | ) | |
| | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO
RECONSIDER BAIL**

The United States of America, by its attorney, ANDREW S. BOUTROS, United States Attorney for the Northern District of Illinois, respectfully submits this response to defendant's motion to reconsider bail (Rec. Doc. 15.) This Court should deny defendant's motion.

**BACKGROUND**

Defendant was initially charged by way of a criminal complaint with controlled substances offenses, in violation of 21 U.S.C. § 841(a)(1). (Rec. Doc. 1.) Subsequently, the grand jury returned an indictment charging defendant with one count of distribution of a controlled substance, and one count of possession with the intent to distribute a controlled substance, both in violation of 21 U.S.C. § 841(a)(1). (Rec. Doc. 5.) Defendant was arrested as part of a long-term investigation regarding trafficking of synthetic cannabinoids, including into prisons and detention facilities, of which defendant was a target.

Specifically, as described in the criminal complaint, over the past several years, correctional institutions throughout the country, including the Cook County Jail,

have seen an increase in drug overdoses and drug possession related to synthetic cannabinoids. These substances are a class of controlled substance that are chemically similar to chemicals found in marijuana, but unlike marijuana which is naturally occurring, are manufactured commonly in a laboratory or abroad. Synthetic cannabinoids are usually significantly more potent than marijuana, and pose a risk of overdose, including potentially causing seizures, stroke, heart attacks and death.

These substances are often smuggled into jails and other institutions through paper soaked with synthetic cannabinoids, which are often disguised as inmate mail, reading material, or legal materials. After arrival at the facility, inmates who receive this paper commonly cut the sheets into smaller square, which are distributed to other inmates at the jail. Despite measures taken by jail personnel, including mail screening, and narcotics-trained canines, law enforcement has been unable to stop liquid-soaked paper from entering the jail population, which has led to multiple overdoses, including overdoses resulting in death or hospitalization. Indeed, recently, as a result of the issues presented by drug-soaked prisoner mail, the Illinois Department of Corrections ("IDOC") has implemented a policy allowing IDOC personnel to electronically scan and digitize incoming mail. *See* Jeremy Gorner, *Illinois prison officials allowed to scan incoming mail amid reports they are tainted by chemicals and drugs*, CHICAGO TRIBUNE, September 3, 2025, available at https://www.chicagotribune.com/2025/09/03/illinois-corrections-prison-mail-scanning/.

The investigation revealed that defendant trafficked in synthetic cannabinoids, including into correctional or detention facilities, through the mails. As charged in the complaint and indictment, law enforcement seized two packages mailed by defendant. The first was mailed by defendant on May 12, 2025, which contained a cloth saturated in liquid wrapped in clear plastic vacuum sealed bags. The cloth contained ADB-4en PINACA, MDMB-4en PINACA, (both synthetic cannabinoids and controlled substances) and other substances. The second was mailed by defendant on June 2, 2025, addressed to "Levon Moore" at an address in Portage, Indiana. Inside contained approximately one kilogram of tan powder, which contained MDMB-4en PINACA.

Moreover, the investigation has revealed that defendant mailed other packages containing synthetic cannabinoids, including to correctional facilities. For instance, on May 30, 2025, defendant mailed a package to Lawernce Correctional Center, located in Sumner, Illinois. The package was mailed using the self-service kiosk at the Calumet City Post Office, and photographs captured by the kiosk showed that defendant and another individual mailed the parcel. The package contained two religious books that were laced with MDMB-4en PINACA. Other seized packages are awaiting analysis from the DEA laboratory. Additionally, records checks conducted by the United States Postal Inspection Service and other information obtained during this investigation revealed that defendant sent or attempted to send multiple packages to various individuals, including to multiple correctional institutions.

Furthermore, law enforcement identified a residence in Calumet City utilized by defendant in furtherance of his drug-trafficking activities. Indeed, agents and TFOs conducted surveillance at the residence and observed defendant or vehicles used by defendant in that area on multiple occasions. Additionally, in late July 2025, geolocation information for defendant's cellphone placed it in the area of the residence.

On July 29, 2025, agents executed a federal search warrant at the residence. Inside the residence, agents located a fake identification card bearing defendant's photograph but in the name of "Levon Moore," which is a name associated with one of the seized packages described above. Additionally, agents located a table in the basement of the residence upon which bottles containing a colored liquid, a funnel, a digital scale, mixing bowls, and other items were located. Agents believe that this area was used to process synthetic cannabinoids for shipment, and laboratory analysis of all of the items seized from the residence are pending. Below is a photograph of this area.



Additionally, inside the residence agents located three shipping labels addressed to inmates at federal prisons, namely, FCI Milan and USP Beaumont, which were created using U.S. Postal self-service kiosks. Photographs for these labels showed defendant using the kiosk to create the labels.

After execution of the search warrant, defendant was arrested in the Northern District of Illinois. On August 1, 2025, the Hon. Maria Valdez conducted a detention hearing and took the matter under advisement. (Rec. Doc. 7.) Later that day, Judge Valdez ordered defendant detained pending trial. (Rec. Doc. 9.) As described in the written order, Judge Valdez was "particularly concerned with the inconsistent statements of the Defendant and his wife as to the Defendant's job, and the

Defendant's inconsistent statements as to his wife's employment." Judge Valdez noted that defendant's "wife as a possible third party custodian would not be sufficient," and that defendant "is very capable of keeping his wife in the dark on his whereabouts." Additionally, Judge Valdez noted that the "charge is very serious, involving mailing or providing pieces of paper soaked in liquid controlled substance, including synthetic cannabinoids, to inmates a penal institution," and that the "weight of the evidence is very strong." (Rec. Doc. 9, at 4.)

On September 3, 2025, defendant filed the instant motion to reconsider bail.

## ARGUMENT

### I.     Defendant's Motion to Reconsider Bail Should Be Denied

Defendant's motion requests that this Court reconsider the decision to order defendant detained.[1] Under the Bail Reform Act, a defendant's detention hearing may only be "reopened . . . if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required." 18 U.S.C. § 3142(f)(2). Here, defendant submits that additional third-party custodians, both of whom are defendant's family members, constitutes a basis for reconsideration. However, defendant certainly knew about the existence of these family members and the potential that they could be

---

[1] The detention order was issued by Judge Valdez, and pursuant to 18 U.S.C. § 3142(f)(2), the detention order may be reopened by "the judicial officer," which appears to refer to the judicial officer who held the initial detention hearing. Therefore, to the extent defendant's motion is pursuant to § 3142(f)(2), it likely should have been filed before Judge Valdez.

third-party custodians at the time of the initial detention hearing, and therefore, this information is not new, and reopening the detention hearing is not warranted. Moreover, even assuming *arguendo* that the additional third-party custodians is new, this information is not material. Judge Valdez relied on a number of factors, including the weight of the evidence, the seriousness of the offense, and inconsistent statements made by the defendant, in her detention determination. None of those factors have changed---if anything, the seriousness of the offense and the weight of the evidence has only increased as additional evidence is tested and analyzed by law enforcement. Although Judge Valdez indicated that the inappropriate of defendant's wife as a third-party custodian was one factor in ordering detention, it is not clear that adding two additional custodians who are more distant relations to defendant would make any difference. Indeed, if defendant is "very capable of keeping his wife in the dark on his whereabouts" he is also capable of doing so to other family members.

## II. If Construed as a Motion Under § 3145(b), Defendant's Motion Should Be Denied

Although defendant has not cited 18 U.S.C. § 3145(b), defendant could potentially seek review of Judge Valdez's detention order with this Court, and therefore, in anticipation of such a motion, the government addresses the merits of such a motion below. Under the Bail Reform Act, the defendant may seek review of a magistrate judge's detention order with the district court. 18 U.S.C. § 3145(b). The district court reviews the release order *de novo*. *See United States v. Ramos-Sosa*, No. 21 CR 497-2, 2022 WL 540665, at *2 (N.D. Ill. Feb. 23, 2022) (Kness, J.); *United States*

7

*v. Cabrera-Lopez,* No. 92 CR 677, 1993 WL 8203, at *1 (N.D. Ill. Jan. 13, 1993); *cf United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991) (for review pursuant to § 3145(a)(1), the court "may start from scratch").

Here, because defendant has been charged with violations of the Controlled Substances Act punishable by more than 10 years of imprisonment, there is a presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." Defendant poses both a risk of danger to the community as well as a flight risk.

First, defendant poses a danger to the community. Defendant shipped out multiple packages containing dangerous controlled substances including to correctional institutions. Evidence seized from the Calumet City residence showed that defendant had control over a premises used to process drugs, including disguising controlled substance shipments using books or other paper-products, and had materials to ship numerous additional packages to inmates. Synthetic cannabinoid-soaked paper products is an emergent issue for correctional and detention facilities, which have resulted in overdoses, hospitalizations, and death. Additionally, these issues have resulted in policy changes at such facilities, including new IDOC policies described above, and policies at the MCC-Chicago that no longer allows prisoners to access paper, including discovery. The quantities trafficked here are substantial, as one of the packages seized contained over 1 kilogram of synthetic cannabinoid in powder form. Defendant's drug trafficking activities were not an isolated incident, in fact, he moved large quantities of synthetic cannabinoids over

8

the course of several months. Drug trafficking, particularly the significant quantities involved in this case, and the risk that defendant will continue to engage in drug trafficking, certainly poses a risk to the community.

Furthermore, defendant has a serious criminal history, going back to the age of 15. Most recently, defendant was convicted in the Southern District of Illinois of stealing firearms from a federal licensee. Defendant's factual basis in that case revealed that defendant committed six burglaries where over 300 guns were stolen. Additionally, in connection with that offense, defendant fled from the Chicago Police Department and rammed a police car with his vehicle. Defendant was sentenced to 108 months of imprisonment on that offense.

With respect to flight, defendant is facing serious charges, which defendant surely knows is likely to result in a significant prison sentence. Indeed, as Judge Valdez recognized, the evidence in this case is strong, including surveillance of defendant mailing packages containing synthetic cannabinoids, photographs of defendant at the self-service kiosks, and evidence seized from the Calumet City residence. Defendant, therefore, has a significant incentive to flee. Furthermore, defendant also has the means to flee. As described above, law enforcement seized multiple fake identification cards with the defendant's picture but with other names. Moreover, defendant utilized fake identities in connection with mailings, including the alias "Levon Moore." Additionally, defendant's willingness to ram a police vehicle to avoid arrest in the prior federal case (a case where defendant was ordered

9

detained), shows that he is willing to take extreme measures to avoid criminal accountability.

Finally, as described above, defendant's proposal of multiple third-party custodians with electronic monitoring does not mitigate defendant's risk of flight or danger to the community. Electronic monitoring would not mitigate future criminal conduct by the defendant given that the offense here was primarily committed through the mails and at a residence controlled by defendant. Moreover, given defendant's inconsistent statements with his wife, Judge Valdez was certainly correct that he is able to keep his wife in the dark about his activities, and there is no reason to believe that two other less-closely-related family members would make any material difference.

In short, this Court order defendant detained both due to dangerousness to the community and based on his risk of flight.

WHEREFORE, for the reasons discussed herein, the government respectfully requests that the Court deny defendant's motion to reconsider bail.

Date: September 9, 2025          Respectfully submitted,


                              ANDREW S. BOUTROS
                              United States Attorney

          By:    */s/ Jonathan L. Shih*
                              JONATHAN L. SHIH
                              Assistant United States Attorney
                              219 South Dearborn Street, 5th Floor
                              Chicago, IL 60604
                              (312) 353-5300